# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

GARRETT NICHOLS,

    *Plaintiff,*

vs.

EMPLOYERS MUTUAL CASUALTY COMPANY,

    *Defendant.*

Case No. 19-1264-EFM

## MEMORANDUM AND ORDER

Before the Court is Defendant Employers Mutual Casualty Company's ("EMC") Motion for Summary Judgment (Doc. 44). Plaintiff Garrett Nichols brings this action seeking damages for unpaid proceeds from an underinsured motorist insurance policy. For the following reason, the Court grants in part and denies in part EMC's motion for summary judgment.

### I.  Factual and Procedural Background[1]

During the course of his employment with SS Air Express, Nichols was involved in a car accident on August 3, 2018, with Rogelio Solorzano. Nichols alleges that he sustained significant personal injuries as a result. Solorzano was 100% negligent for the accident. His insurance paid

---

[1] In accordance with summary judgment procedures, the facts are taken from the pretrial order and the parties' briefings and construed in the light most favorable to the non-moving party.

Nichols the policy limit of $50,000. After the accident, Nichols filed a workers' compensation claim against SS Air Express, which was subsequently settled for $36,771.43. As part of the workers' compensation settlement, SS Air Express and its insurer agreed to pay any related medical expenses incurred by Nichols through the date of the settlement hearing, lost wages totaling $1,273.55, and a lump sum payment of $10,000 for a 14% permanent partial bodily impairment and future medical expenses. They also agreed to waive their statutory workers' compensation subrogation lien on any amounts Nichols might recover from Solorzano.

At the time of the collision, Nichols was insured under a policy by EMC issued to SS Air Express. This policy provided Nichols with underinsured motorist coverage up to $1,000,000.[2] The policy contains a "Limit of Insurance" provision that reads:

> No one will be entitled to receive duplicate payments for the same elements of "loss" under this coverage and any Liability Coverage form, Medical Payments Coverage endorsement, Uninsured Motorists Coverage endorsement or Underinsured Motorists Coverage endorsement attached to this Coverage Part.
>
> We will not make a duplicate payment under this coverage for any element of "loss" for which payment has been made by or for anyone who is legally responsible.
>
> We will not pay for any element of "loss" if the person is entitled to receive payment for the same element of "loss" under any workers' compensation, disability benefits or similar law or personal injury protection coverage.[3]

Nichols gave EMC a time-limited settlement demand on July 24, 2019 for the underinsured motorist policy limits less $50,000, representing Nichols' liability settlement with Solorzano's insurer. On September 25, 2019, EMC offered to settle the claim for $32,500. Nichols rejected the offer.

---

[2] The policy also insured against loss by fire, tornado, lightning, or hail.

[3] Doc. 45-2, at 7. The policy defines "loss" as "direct and accidental loss or damage."

On September 30, 2019, Nichols filed this action claiming that EMC breached its insurance contract by failing to pay him proceeds from the underinsured motorist policy. Nichols seeks over $1,000,000 in damages for past, present, and future medical, non-economic, and economic losses. EMC now moves for summary judgment.

## II.     Legal Standard

Summary judgment is appropriate if the moving party demonstrates that there is no genuine issue as to any material fact, and the movant is entitled to judgment as a matter of law.[4] A fact is "material" when it is essential to the claim, and issues of fact are "genuine" if the proffered evidence permits a reasonable jury to decide the issue in either party's favor.[5] The movant bears the initial burden of proof and must show the lack of evidence on an essential element of the claim.[6] The nonmovant must then bring forth specific facts showing a genuine issue for trial.[7] These facts must be clearly identified through affidavits, deposition transcripts, or incorporated exhibits—conclusory allegations alone cannot survive a motion for summary judgment.[8] The court views all evidence and reasonable inferences in the light most favorable to the non-moving party.[9]

## III.     Analysis

Nichols seeks to recover insurance benefits under his underinsured motorist policy with EMC. As such, this is fundamentally a contract action and therefore the Court's analysis is first

---

[4] Fed. R. Civ. P. 56(a).

[5] *Haynes v. Level 3 Commc'ns, LLC*, 456 F.3d 1215, 1219 (10th Cir. 2006) (citing *Bennett v. Quark, Inc.*, 258 F.3d 1220, 1224 (10th Cir. 2001)).

[6] *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)).

[7] *Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005) (citation omitted).

[8] *Mitchell v. City of Moore*, 218 F.3d 1190, 1197 (10th Cir. 2000) (citing *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670–71 (10th Cir. 1998)).

[9] *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 927 (10th Cir. 2004) (citation omitted).

and foremost governed by Nichols' insurance contract.[10]  The contract contains the following provision: "[EMC] will not pay for any element of 'loss' if [Nichols] is entitled to receive payment for the same element of 'loss' under any workers' compensation . . . coverage."[11]  EMC argues that this provision prevents Nichols from recovering under both a workers' compensation policy and the underinsured motorist policy, as he seeks to do here.  Nichols disagrees, arguing that Kansas case law interpreting K.S.A. § 40-284(e)—the statutory exclusions to mandated underinsured motorist coverage—prohibits only duplicative payments actually awarded.  In sum, the parties agree that the contractual provision purportedly excludes Nichols' recovery in this case but disagree as to the validity of that provision under Kansas law.

Kansas mandates that all insurance policies issued in the State include uninsured or underinsured motorist coverage.[12]  However, insurers may insert certain exclusions into insurance policies.[13]  One such exclusion permits insurers to limit an insured's recovery from an underinsured motorist policy "to the extent that workers' compensation benefits apply . . . ."[14]  The Kansas Supreme Court's decisions in *Tyler v. Employers Mutual Casualty Company*[15] and *Bussman v. Safeco Insurance Company of America*[16] interpreted this statute and govern this Court's analysis.

---

[10] *See Bussman v. Safeco Ins. Co. of Am.*, 298 Kan. 700, 317 P.3d 70, 81–82 (2014).

[11] Doc. 45-2, at 7.

[12] K.S.A. § 40-284(a).

[13] K.S.A. § 40-284(e).

[14] K.S.A. § 40-284(e)(4).

[15] 274 Kan. 227, 49 P.3d 511 (2002).

[16] 298 Kan. 700, 317 P.3d 70 (2014).

In *Tyler*, a deputy sheriff was injured in a car accident while on duty and sued the other driver for personal injury damages.[17] He also received workers' compensation benefits for the accident, which was subsequently settled and explicitly omitted an award for future medical expenses. The deputy sheriff then sought uninsured motorist benefits from the insurer, EMC (the same insurer as in the present case). The district court granted summary judgment against EMC, awarding the deputy sheriff damages for uninsured motorist benefits less his prior recovery from workers' compensation. The Court of Appeals affirmed, and on appeal to the Supreme Court, EMC argued that its uninsured motorist policy contained a provision excluding the deputy sheriff's award since he previously recovered under workers' compensation. The Supreme Court held that "[a]n insurer may exclude or limit its [uninsured or underinsured motorist] coverage only to the extent that duplicative workers compensation payments have been awarded."[18] The Supreme Court therefore affirmed since "the district court correctly allowed a setoff for duplicate benefits."[19]

Twelve years later, the Kansas Supreme Court distinguished *Tyler* in *Bussman*. In that case, the plaintiff was an employee acting within the scope of her employment when she was involved in a car accident.[20] She was covered by both a workers' compensation policy and an underinsured motorist policy. An ALJ awarded her workers' compensation benefits for temporary total disability and permanent partial disability, as well as stating that "[f]uture medical will be

---

[17] *Tyler*, 49 P.3d at 514.

[18] *Id.* at 518.

[19] *Id*.

[20] *Bussman*, 317 P.3d at 75

considered upon proper application."[21] In a subsequent lawsuit to collect underinsured motorist benefits, a jury awarded the plaintiff damages for future medical expenses. The Kansas Court of Appeals affirmed, rejecting the insurer's argument that the jury's future medical expenses award was duplicative of the workers' compensation award. Upon appeal, the Kansas Supreme Court explained that "the question of whether the [underinsured motorist] carrier will owe [the plaintiff] . . . for future medical expenses turns on our interpretation of [the insurer's] policy limitations, as constrained by our interpretation of the statutory provisions of K.S.A. 40–284(e)(4)."[22] The Supreme Court distinguished *Tyler*, holding that "it is the entitlement to be paid an element of loss under workers compensation that makes 'workers' compensation benefits apply' within the meaning of K.S.A. 40–284(e)(4)."[23] In clarifying *Tyler*'s non-duplication doctrine, the court stated that "the payment of future medical expenses as part of the [underinsured motorist] damages would duplicate [the plaintiff's] *right to receive* those expenses in her workers compensation case" and that "[the plaintiff's] *entitlement to receive* future medical expenses as part of her workers compensation claim precludes the recovery of those damages under the [underinsured motorist] coverage . . . ."[24] As such, the Supreme Court clarified that insurers may exclude the duplication of the entitlement to receive *categories* of benefits under both workers' compensation and underinsured motorist coverage, rather than simply the duplication of the *amount* of the benefits.

In moving for summary judgment, EMC argues that Nichols was entitled to all elements of loss in his workers' compensation claim that he now seeks in this action, and that Nichols is

---

[21] *Id*.

[22] *Id*. at 81.

[23] *Id*. at 82.

[24] *Id*. at 80 (emphasis added).

therefore unable to recover for those elements under his underinsured motorist policy. In short, EMC posits that Nichols' claim here is limited to all the elements of loss—and their corresponding categories of benefits—that a plaintiff could have theoretically recovered under workers' compensation law. However, the court in *Bussman* construed "entitlement to be paid an element of loss" to mean the workers' compensation benefits available in the actual case, not all elements of loss that *any* plaintiff would, in theory, be able to recover under workers compensation law.[25] The Court's analysis therefore turns on what elements of loss Nichols was entitled to receive under the workers' compensation settlement in this case, since any potential recovery here must exclude elements of loss he was entitled to receive from that settlement.

As a starting point, the insurance contract here says that Nichols is not entitled to receive underinsured motorist benefits for any element of his loss for which he is also entitled to receive payment through his workers' compensation claim. Nichols argues that his workers' compensation settlement did not entitle him to elements of loss for future economic and present and future non-economic damages. Whereas the workers' compensation settlement in *Tyler* provided a clear delineation of the award amounts and their corresponding categories, the settlement in this case is less clear. What is clear, however, is that Nichols was entitled to elements of loss covering past economic damages and past medical expenses. Both of those elements of loss are clearly labeled and assigned specific dollar awards. For those elements of loss, the Court grants summary judgment since Nichols would duplicate his recovery if he succeeded in this action.

---

[25] *See id.* at 83 ("As evidenced by the ALJ's order, workers compensation benefits obviously apply to [the plaintiff's] future medical expenses, which allows [the insurer] to exclude those benefits from the [underinsured motorist] coverage. Moreover, as noted, [the] policy excludes [the plaintiff's] future medical expenses because that is an element of her loss for which she is entitled to payment under workers compensation.").

However, to the extent that the parties disagree on what elements of loss were included in the ambiguous aspects of the workers' compensation settlement, that disagreement presents a genuine dispute of material fact that is ill-suited for resolution at summary judgment. EMC argues that as a matter of law the disability benefit awarded in the settlement includes the elements of loss for future economic and non-economic damages. In support of this argument, EMC reiterates that—in a general sense—workers' compensation disability awards always include benefits for future economic and non-economic damages. But once again, what matters here are the elements of loss Nichols was actually entitled to receive in this case—not the award that a prototypical workers' compensation plaintiff could receive.

The settlement award at issue reads: "Any and all issues will be resolved in consideration for the lump sum payment of $10,000.00 which reflects a 14% permanent injury impairment to the body as a whole for a traumatic brain injury and an additional sum for future medical treatment."[26] The category of future medical expenses is clearly included in this provision. As such, the Court grants EMC summary judgment for that element of loss as well. However, the remaining award is ambiguous. Unlike the workers' compensation award in *Tyler*, which clearly delineated categories for disability, future economic, and future non-economic losses, the settlement here lacks sufficient clarity for a stipulated meaning. EMC argues that the lump sum payment for Nichols' disability includes all future economic and non-economic damages and that recovery in this action for those elements of loss should therefore be prohibited. But from a plain reading, it is unclear exactly which elements of loss the parties understood to be included in the

---

[26] Doc. 48-1.

-8-

settlement. As such, the parties' disagreement on this matter presents a genuine dispute of material fact that the Court declines to resolve at summary judgment.

### IV. Conclusion

The Court grants in part and denies in part EMC's motion for summary judgment. Summary judgment is granted to the extent that Nichols seeks to duplicate his right to receive underinsured motorist benefits for past economic damages and past and future medical expenses. Otherwise, summary judgment is denied for all other elements of loss for which Nichols seeks to recover benefits in this action.

**IT IS THEREFORE ORDERED** that Defendant Employers Mutual Casualty Company's Motion for Summary Judgment (Doc. 44) is **GRANTED IN PART** and **DENIED IN PART.**

**IT IS SO ORDERED.**

Dated this 9th day of December, 2020.

*Eric F. Melgren*

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE